**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

                                   :

**BOARD OF EDUCATION OF THE**       :
**YORKTOWN CENTRAL SCHOOL DISTRICT** :

                                  :

               **Plaintiff,**           :         **Civil Action No. 17-CV- 6542 (VB)**

                                  :

              **-against-**            :

                                  :

**C.S. AND S.S., INDIVIDUALLY AND ON**   :
**BEHALF OF M.S., A MINOR,**            :

                                  :

              **Defendant.**           :
_____ :

 

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR SUMMARY JUDGMENT**

 

Respectfully submitted:

**SHAW, PERELSON, MAY & LAMBERT, LLP**
Attorneys for Defendants
Mark C. Rushfield, Esq., Of Counsel (MCR0231)
21 Van Wagner Road
Poughkeepsie, New York 12603
(845) 486-4200

On the Brief:
Mark C. Rushfield, Esq.

## TABLE OF CONTENTS

**PAGE**

**TABLE OF AUTHORITIES** ........................................................................ii

**PRELIMINARY STATEMENT** ............................................................... 1

**STATEMENT OF FACTS** ........................................................................ 3

**STANDARD OF REVIEW** ........................................................................ 7

**ARGUMENT**

   **POINT I**

      **THE SRO ERRED AS A MATTER OF LAW IN HOLDING THAT
      IT WAS PROHIBITED FROM CONSIDERING A CORRECTED
      IEP ISSUED IN WRITING ONE DAY AFTER THE RESOLUTION
      PERIOD HAS EXPIRED BECAUSE DOING SO WOULD
      CONSTITUTE THE ACCEPTANCE OF RETROSPECTIVE
      EVIDENCE TO REHABILITATE AN IEP** ................................... 9

   **POINT II**

      **SHOULD THE COURT FIND THAT THE SRO DID NOT ERR IN
      ITS APPLICATION OF THE DECISION IN *R.E.* TO FORECLOSE
      CONSIDERATION OF THE CORRECTED IEP, THE COURT
      SHOULD EXERCISE ITS EQUITABLE POWER TO DENY THE
      TUITION RELIEF ORDERED BY THE SRO AND THE
      DEFENDANTS' ANTICIPATED DEMAND FOR PREVAILING
      PARTY ATTORNEY FEES AND COSTS** ................................... 14

**CONCLUSION** .......................................................................... 18

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

### <u>CASES</u>

*A.M. v. New York City Dep't of Educ.*,
    845 F.3d 523 (2d Cir. 2017)........................................................................................ 9

*A.W. v. New York City Dep't of Educ.*,
    15-CV-3534 (VSB), 2018 WL 1027435 (S.D.N.Y. Feb. 21, 2018) ......................... 9

*B.R. ex rel. K.O. v. New York City Dep't of Educ.*,
    910 F. Supp. 2d 670 (S.D.N.Y. 2012)...................................................................... 9

*Bd. of Educ. of City Sch. Dist. of City of New York v. Gustafson*,
    00 CIV. 7870 (GEL), 2002 WL 313798 (S.D.N.Y. Feb. 27, 2002) ........................ 15

*Carmel Cent. Sch Dist v. V.P*,
    04 Civ. 3320 (CM), 2005 WL 1469472 (S.D.N.Y. June 9, 2005)............................ 9

*Doe v. E. Lyme Bd. of Educ.*,
    790 F.3d 440 (2d Cir. 2015)..................................................................................... 15

*Garcia v. Bd. of Educ. of Albuquerque Public Sch.*,
    520 F.3d 1116 (10th Cir. 2008) ....................................................................... 15, 17

*Hecht Co. v. Bowles*,
    321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944)................................................... 15

*J.C. ex rel. C.C. v. New York City Dep't of Educ.*,
    13 CIV. 3759 (PGG), 2015 WL 1499389 (S.D.N.Y. Mar. 31, 2015),
    *aff'd sub nom. J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016)............. 13

*J.G. v. Briarcliff Manor Union Free Sch. Dist.*,
    682 F.Supp.2d 387 (S.D.N.Y.2010).......................................................................... 8

*J.K. v. Hudson City Sch. Bd. of Educ.*,
    14 CV 1985, 2015 WL 5729903 (N.D. Ohio Sept. 28, 2015) ................................ 12

*K.A. ex rel. F.A. v. Fulton Cty. Sch. Dist,*
   741 F.3d 1195 (11th Cir. 2013) ..................................................................... 11

*Lillback ex rel. Mauclaire v. State of Conn. Dep't of Educ.,*
   397 F.3d 77 (2d Cir. 2005)............................................................................... 8

*M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.,*
   858 F.3d 1189 (9th Cir.), *cert. denied sub nom. Antelope Valley Union High Sch. Dist.*
   *v. M.C. ex rel. M.N.,* __ U.S. __, 138 S. Ct. 556, 199 L. Ed. 2d 437 (2017) .......................... 11

*M.S. v. Bd. of Educ. of City Sch. Dist. of Yonkers,*
   231 F.3d 96 (2d Cir. 2000)............................................................................... 8

*Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.,*
   386 F.3d 158 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ.*
   *for Arlington Cent. Sch. Dist.,* 112 F. App'x 89 (2d Cir. 2004) ................................. 15

*Mrs. B. v. Milford Bd. Of Educ.,*
   103 F.3d 1114 (2d Cir. 1997)........................................................................... 8

*N.S. v. New York City Dep't of Educ.,*
   13-CV-7819 (VEC), 2014 WL 2722967 (S.D.N.Y. June 16, 2014)........................................ 13

*O.O. ex rel. Pabo v. D.C.,*
   573 F. Supp. 2d 41 (D.D.C. 2008) ..................................................................... 14

*R.E.v. New York City Dep't of Educ,*
   694 F.3d 167 (2d Cir. 2012)............................................... 1, 2, 8, 9, 10, 11, 12, 13, 14

*S.E. v. New York City Dep't of Educ.,*
   113 F. Supp. 3d 695 (S.D.N.Y. 2015)................................................................... 13

*S.Y. v. New York City Dep't of Educ.,*
   210 F. Supp. 3d 556 (S.D.N.Y. 2016)................................................................... 11

*Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.,*
   471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)................................................. 15

*Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.,*
   6 F.Supp. 3d 424 (S.D.N.Y. 2014) ..................................................................... 13

*T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*,
    752 F.3d 145 (2d Cir. 2014).............................................................................. 8

*Viola v. Arlington Cent. Sch. Dist.*,
    414 F. Supp. 2d 366 (S.D.N.Y. 2006)............................................................... 8

*Y.A. v. N.Y. City Dep't of Educ.*,
    15-CV-05790 (CM), 2016 WL 5811843 (S.D.N.Y. Sept. 21, 2016)............... 8, 14

## <u>STATUTES</u>

29 CFR § 300.510 (a)(1) ...................................................................................... 10

20 U.S.C. § 1414(d)(3)(D) ................................................................................... 10

20 U.S.C. § 1414(d)(3)(F) .................................................................................... 10

20 U.S.C. § 1415(b)(3) ......................................................................................... 10

20 U.S.C. § 1415(c)(1).......................................................................................... 10

20 U.S.C. § 1415(f)(1)(B)............................................................................ 8, 11, 12

20 U.S.C. § 1415(f)(1)(B)(i) .......................................................................... 1, 4, 11

20 U.S.C. § 1415(f)(1)(B)(ii)............................................................................... 1, 5

20 U.S.C. § 1415(i)(2) ............................................................................................ 8

20 U.S.C. § 1415(i)(2)(B)........................................................................................ 8

20 U.S.C. § 1415(i)(2)(C)(iii)............................................................................... 14

## PRELIMINARY STATEMENT

In this case, the plaintiff Yorktown Central School District ("District") seeks relief from this Court as concerns the decision of the State Review Officer ("SRO") in SRO Decision No. 17-043.  The District requests that the Court render an order (1) reversing the decision of the SRO and (2) either (a) adopting the decision of the Impartial Hearing Officer/alternative decision of the SRO that the District had provided a free appropriate public education ("FAPE")  to the student for the 2016-17 school year, (b) declining to adopt and confirm the decision of the SRO that the brief delay beyond the 30-day resolution period for issuance of the corrected IEP warranted a finding of denial of a FAPE to the student for the 2016-17 school year, or (c) exercising its equitable powers to decline to grant the relief requested by the defendants, who are cross-moving for confirmation and enforcement of the SRO's order in SRO Decision No. 17-043 (together with an award of prevailing attorney fees and costs). The District now moves for summary judgment seeking such relief.

In SRO Decision No. 17-043, the SRO reversed the decision of the Impartial Hearing Officer ("IHO") that the District's corrected IEP for the student for the 2016-17 school year provided the student with a FAPE based upon the SRO's misinterpretation and misapplication of the decision of the Court of Appeals in *R.E. v. New York City Dep't of Educ*, 694 F.3d 167 (2d Cir. 2012). The SRO held that under *R.E.,* an IEP subjected to revision during the resolution period required by 20 U.S.C. § 1415(f)(1)(B)(i) and (ii) that is formally issued (i.e., by its being mailed to the parents) a day later than the "30 days of the receipt of the [due process] complaint" authorized by 20 U.S.C. § 1415(f)(1)(B)(ii) is null and void.

The SRO made clear that, but for his misunderstanding of the dictates of *R.E.*, he would have upheld the IHO's decision that the District's corrected IEP for the student provided the

1

student with a FAPE (and engaged in a detailed analysis of the facts and corrected IEP in support of that conclusion). Further, the SRO made clear his lack of certainty as to whether he was properly applying the dictates of *R.E.* in foreclosing consideration of the corrected IEP for the student's 2016-17 school year. Thus, it provided at a footnote 10 to its decision that it was not sure whether what it considered to be the "rule in R.E." was "intended to be strictly applied" (*SRO Decision at page 12 n. 10*) and acknowledged that there were "virtually no state administrative or reported court cases applying R.E. that address to the outer boundaries of the district's ability to modify an IEP using the resolution process". *SRO Decision at page 12*.

Nonetheless, considering itself to be foreclosed from applying the mailed-a-day-late corrected IEP, which the SRO acknowledged provided the student with a FAPE, the SRO held that, as the initial uncorrected IEP thereby provided for a class size (i.e., 12:1+1), the District could not provide in its middle school for the student, the SRO was compelled to find that the District had failed to provide a FAPE for the student for the 2016-17 school year. Consequently, the SRO ordered the District to provide full tuition payment or reimbursement for the student's attendance at a private school at which the student had been unilaterally placed by her parents.

The District submits that the SRO erred in his application of the decision of the Second Circuit in *R.E.* and the applicable provisions of the IDEIA to foreclose the IHO and SRO from relying upon the corrected IEP for determining whether the District had provided a FAPE to the student for the student's 2016-17 school year. As such, the District submits that the SRO's opinion on a matter of law in that regard should be rejected by this Court and that the Court should affirm the ruling of the IHO and alternative ruling of the SRO that the District's applicable corrected IEP for the student's 2016-17 school year provided the student with a FAPE.

Alternatively, the District submits that under the facts established through the administrative record below – demonstrating that the defendant parents were at all relevant times, beginning with the Committee on Special Education ("CSE") June 9, 2016 meeting, fully aware of the correct terms of the June 9, 2016 IEP and that the special education program being recommended for the student for the 2016-17 school year involved a 15:1+1 special class size and ratio (but nonetheless refused, during the resolution session process, to agree to the correction of the initial IEP to reflect the 15:1+1 class size and ratio that had been consistently communicated to the parents) – the Court should exercise its equitable power under the provisions of the IDEIA to deny to the defendant parents the tuition payment or reimbursement remedy directed by the SRO (as well as prevailing party attorney fees and costs).

## STATEMENT OF THE FACTS

The relevant facts to the plaintiff District's motion for summary judgment are set forth in detail in the Rule 56.1 Statement submitted herewith. Nonetheless, the salient facts are set forth below.

On June 9, 2016, the District's CSE convened to conduct an annual review and to develop the student's IEP for the 2016-17 school year, through which the student would be entering the District's middle school. The student's prior IEP, for the student's attendance at elementary school (which had not been operative in that the student had attended the Eagle Hill private school), had provided for a 12:1+1[1] special class placement of the student for academic courses, but the middle school did not have a 12:1+1 special education class for middle school students, but rather a 15:1+1 special education class. During the June 9, 2016 CSE meeting, it

---

[1] The references to 12:1+1 or 15:1+1 are to a class size of 12 or 15 students, with 1 special education teacher and 1 teaching assistant.

was disclosed to the defendant parent in attendance, C.S., that the actual special class size and ratio for academic courses for the student's attendance at the middle school would be 15:1+1. Furthermore, later that month, the defendant parent C.S. met with the teachers in the middle school, who confirmed to her that the middle school class recommended for the student was a 15:1 class.

Before the defendant parents had even received the IEP for the student's 2016-17 school year, by letter dated August 17, 2016, the defendant parents rejected the 15:1+1 programming for the student discussed during the June 9, 2016 CSE meeting, objecting, among other things, to the 15:1:1 class size recommended during the June 9, 2016 CSE meeting. In that letter, the defendant parent further notified the District that the defendant parent was unilaterally placing the student at the Eagle Hill private school and would seek reimbursement for all tuition costs for the 2016-17 school year. Less than two weeks later, on or about August 30, 2016, the defendant parents received a copy of the June 2016 IEP, which mistakenly carried over the 12:1+1 special education class reference in the student's IEP for the 2015-16 school year, rather than the 15:1+1 special education class that had been disclosed to defendant parent C.S. during the June 9, 2016 CSE meeting and again during her meeting with the middle school teachers later in June of 2016.

Almost a month later, by due process complaint notice dated September 26, 2016, the defendant parents alleged that the District had failed to provide the student with a FAPE and asserted, among multiple other grounds, the District's inability to implement a 12:1+1 special class as had been mistakenly referenced in the IEP the defendant parents had received on or about August 30, 2016. Pursuant to 20 U.S.C. §1415(f)(1)(B)(i), the District scheduled a resolution session with the defendant parents and the defendant parent(s) participated in such a session with a representative from the District's IEP team, IEP Team Member/CSE

4

Chairperson/Dir. of Pupil Personnel Services Michael Rosen, on October 7, 2016.  During that October 7, 2016 resolution session, Mr. Rosen confirmed to the defendant parent(s) that there were two clerical errors set forth in the June 9, 2016 IEP, one of which was that the IEP should have provided for a class size and ratio of 15:1+1 for the student's special class at the middle school for the 2016-17 school year, and the other of which was that the student was currently prescribed medication for her ADHD.  Even though the defendant parents were fully aware from June 9, 2016 onward that the IEP for the student's 2016-17 school year was to provide for a 15:1+1 special class and were aware that the student was on a prescribed medication for her ADHD, during the October 7, 2016 resolution session, the defendant parents refused to agree to any changes being made to address those two errors in the student's 2016-17 IEP.

Nonetheless, absent the agreement of the defendant parents, at the October 7, 2016 resolution session, the CSE corrected the two errors on the June 9, 2016 IEP, and the administrative record evidences that those corrections were formalized in the development of the corrected IEP for the student's 2016-17 school year in mid-October of 2016. However, for reasons unexplained in the administrative record, the corrected IEP appears to have not been sent to the defendant parents until October 27, 2016.  That date was one day beyond the "30 days of the receipt of the complaint" for a  resolution of the complaint "to the satisfaction of the parents" provided for under 20 U.S.C. § 1415(f)(1)(B)(ii), during which the period for the commencement of due process hearings is tolled.

Following the development of the corrected IEP for the student's 2016-17 school year, on October 21, 2016, within the 30-day period provided for under 20 U.S.C. § 1415(f)(1)(B)(ii), counsel for the District wrote to counsel for the defendant parents. In that October 21, 2016 letter, in responding to the defendant parents' "Claim 8" in the defendant parents' September 26,

2016 due process complaint notice that "[t]he District . . . stated the incorrect class size on the IEP", counsel for the District in a "Response 8" replied that "[t]o the extent that the 2016-2017 IEP misidentified the class sizes recommended for student, such mistake was corrected at the Resolution Session and the correct size of special education classes are identified on the IEP issued as a result of the Resolution Session."

The issue of whether the District was bound to the initial incorrect IEP for the student's 2016-17 school year or could rely upon the corrected IEP for the student's 2016-17 school year was fully litigated before the IHO.  The IHO held that the defendant parents were aware of the 15:1+1 class ratio recommended for the student's 2016-17 school year as of the CSE meeting on June 9, 2016; that the defendant parents were deprived neither of knowledge that the 15:1+1 class size and ratio was what was proposed for the student's 2016-17 school year, nor of the opportunity to contest the appropriateness of such a class size or ratio; that the record established that the defendant parents were opposed not only to a class size of 15:1+1, but equally opposed to a class size of 12:1+1 as too large for the student. The IHO ruled that the procedural errors raised by the defendant parents, including the incorrect class size and ratio error in the initial IEP, did not impede the student's right to a FAPE, prevent the defendant parents from participating in the process of developing the student's 2016-17 IEP or cause a deprivation of educational benefits to the student. The IHO held that the corrected IEP for the student's 2016-17 school year was operative and provided the student with a FAPE.

Upon appeal from the IHO's decision by the defendant parents, the SRO held that, because the "District did not reduce the corrections to the June 2016 IEP to writing and provide a new prior written notice until after the end of the resolution period on October 26, 2016", "according to the Second Circuit's holding in R.E. [v. New York City Dep't of Educ., 694 F.3d

167 (2d Cir. 2012)], the district is precluded from relying on a corrected IEP that recommended a 15:1+1 special class that appears to have been rehabilitated[2] after the close of the 30-day resolution period, and the penalty that the Second Circuit spoke of is that the district is required to defend the June 2016 IEP that recommended a 12:1+1 special class." *SRO Decision number 17-043 at page 11.* The SRO held that acceptance of the corrected IEP as operative would constitute the prohibited acceptance of retrospective evidence to rehabilitate the initial incorrect IEP.

As the District's middle school did not have a 12:1+1 special class, that ruling of the SRO precluded the District from establishing that its IEP for the student's 2016-17 school year provided the student with a FAPE, since the District admittedly could not provide such a special class size or ratio for the 2016-17 school year. The consequence was that the SRO held that the applicable 2016-17 IEP for the student did not provide the student with a FAPE and directed the District to reimburse or pay for the student's tuition at the Eagle Hill private school for the 2016-17 school year.

Nonetheless, as noted above, acknowledging that his decision in the instant case was without precedent, the SRO addressed the defendant parents' claims before him on the appeal and, in a detailed analysis of the administrative record relating to those claims, agreed with the IHO that the corrected IEP would have provided the student with a FAPE for the 2016-17 school year.

## STANDARD OF REVIEW

The IDEIA provides that, where a party brings suit to challenge the administrative decision of the SRO made as a consequence of the impartial hearing process, this Court "shall

---

[2] The administrative record does not support the conclusion that the corrected IEP was not "reduced to writing" or that the incorrect initial IEP was not "rehabilitated" prior to the expiration of the resolution period. To the contrary, the administrative record evidences that the corrections to the IEP were made well prior to the expiration of the resolution period and only evidences that the corrected IEP was not mailed to the defendant parents until the day following the expiration of the resolution period.

receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B); *J.G. v. Briarcliff Manor Union Free Sch. Dist.*, 682 F.Supp. 2d 387, 392 (S.D.N.Y.2010).  Neither party in the instant matter is requesting that this Court accept additional evidence.

The parties and Court have agreed to address the issues before the Court through a summary judgment practice. It is recognized that a motion for summary judgment is an appropriate and "pragmatic procedural mechanism for reviewing administrative decisions" under the IDEIA. *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 160 (2d Cir. 2014). However, this Court's function under 20 U.S.C. §1415(i)(2) differs from the typical summary judgment review because the existence of a disputed issue of material fact will not preclude a motion in the format of one for summary judgment in the IDEIA context. *M.S. v. Bd. of Educ. of City Sch. Dist. of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000); *Viola v. Arlington Cent. Sch. Dist.*, 414 F. Supp. 2d 366, 377 (S.D.N.Y. 2006).

In the instant case, as discussed in Point I of the Argument below, the District contends that the SRO erred in interpreting and applying the dictates of the Second Circuit Court of Appeals in *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) as concerns whether the SRO was enabled to consider the adequacy (in terms of whether it provided a FAPE to the student) of an IEP apparently mailed to the defendant parents one day after the expiration of the resolution period  provided for at 20 U.S.C. § 1415(f)(1)(B). No deference is owed to the SRO's conclusions in this regard. *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005); *Mrs. B. v. Milford Bd. Of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997); *Y.A. v. N.Y. City Dep't of Educ.*, 15-CV-05790 (CM), 2016 WL 5811843, at *8 (S.D.N.Y. Sept.

21, 2016); *Carmel Cent. Sch Dist v. V.P*, 04 Civ. 3320 (CM), 2005 WL 1469472, at *4 (S.D.N.Y. June 9, 2005) ("[A]n SRO's determination of a pure question of law is not subject to deference."). Nor is deference owed to factual determinations made by the SRO where those determinations are not based upon a thorough and careful review of the administrative record. *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 534 (2d Cir. 2017) ("To merit deference, '[t]he SRO's or IHO's factual findings must be reasoned and supported by the record.'"); *A.W. v. New York City Dep't of Educ.,* 15-CV-3534 (VSB), 2018 WL 1027435, at *3 (S.D.N.Y. Feb. 21, 2018); *B.R. ex rel. K.O. v. New York City Dep't of Educ.,* 910 F. Supp. 2d 670, 675 (S.D.N.Y. 2012). Thus the SRO's expressed conclusions that the corrections to the initial June 9, 2016 IEP were not "reduced to writing" and that the initial incorrect IEP was not "rehabilitated" until after October 26, 2016 are not entitled to any deference as they are not supported by any evidence in the record and are contrary to the un-contradicted testimony in the record that the corrected IEP was developed in mid-October of 2016.

## ARGUMENT

### POINT I

**THE SRO ERRED AS A MATTER OF LAW IN HOLDING THAT IT WAS PROHIBITED FROM CONSIDERING A CORRECTED IEP ISSUED IN WRITING ONE DAY AFTER THE RESOLUTION PERIOD HAS EXPIRED BECAUSE DOING SO WOULD CONSTITUTE THE ACCEPTANCE OF RETROSPECTIVE EVIDENCE TO REHABILITATE AN IEP**

In *R.E.,* 694 F.3d at 187-88, the Court held:

> An important feature of the IDEA is that it contains a statutory 30-day resolution period once a "due process complaint" is filed. 20 U.S.C. § 1415(f)(1)(B). That complaint must list all of the alleged deficiencies in

the IEP. The Department then has thirty days to remedy these deficiencies without penalty. **If, at the end of the resolution period, the parents feel their concerns have not been adequately addressed and the amended IEP still fails to provide a FAPE, they can continue with the due process proceeding and seek reimbursement. The adequacy of the IEP will then be judged by its content at the close of the resolution period**.

Because of this resolution period, there is no danger that parents will take advantage of a school district by failing to alert it to IEP deficiencies and subsequently recover tuition based on those deficiencies. **A school district that inadvertently or in good faith omits a required service from the IEP can cure that deficiency during the resolution period without penalty once it receives a due process complaint. If, however, the school district fails to rehabilitate an inadequate IEP within the resolution period, it may not later benefit from the use of retrospective evidence**—that is, evidence showing that a child's public education would have been materially different than what was offered in the IEP.  **Emphasis** added

In *R.E.*, 694 F.3d at 188, the Court further held:

> **[W]ith the exception of amendments made during the resolution period**, an IEP must be evaluated prospectively as of the time it was created. **Retrospective evidence that materially alters the IEP is not permissible**. This rule recognizes the critical nature of the IEP as the centerpiece of the system, ensures that parents will have sufficient information on which to base a decision about unilateral placement, and puts school districts on notice that they must include all of the services they intend to provide in the written plan. **If a school district makes a good faith error and omits a necessary provision, they have thirty days after the parents' complaint to remedy the error without penalty. Emphasis** added

The Court in *R.E.* thus recognized that an IEP can effectively be "amended", corrected or changed by a school district during the statutorily mandated resolution period even though it is not "amended" or changed pursuant to the formal requirements of 20 U.S.C. § 1415(b)(3) and (c)(1) and 20 U.S.C. §1414(d)(3)(D) and (F), which  require, respectively, prior written notice of a proposed amendment or change to an IEP and either the agreement of the parent(s) to such an

amendment or, absent same, participation of the "entire IEP team" at an IEP team meeting.[3] See

*M.C. by & through M.N. v. Antelope Valley Union High Sch. Dist.*, 858 F.3d 1189, 1196-98 (9th

Cir.), *cert. denied sub nom. Antelope Valley Union High Sch. Dist. v. M.C. ex rel. M.N.*, __ U.S.

__, 138 S. Ct. 556, 199 L. Ed. 2d 437 (2017), *K.A. ex rel. F.A. v. Fulton Cty. Sch. Dist*, 741 F.3d

1195, 1204-06 (11th Cir. 2013) and *S.Y. v. New York City Dep't of Educ.*, 210 F. Supp. 3d 556,

570 (S.D.N.Y. 2016).

However, nothing in the resolution session provisions at 20 U.S.C. § 1415(f)(1)(B) either

provides for any formal IEP amendment notice or process during the resolution session period or

when the act of "amendment", change,  revision or correction of an IEP by virtue of the conduct

of the parties during the resolution session process is deemed to have occurred. Nor does *R.E.*

provide that guidance.

In the instant case, at the resolution session held on October 7, 2016, it was confirmed to

the defendant parent by IEP Team Member/CSE Chairperson/Dir. of Pupil Personnel Services

Rosen that the initial incorrect IEP was being amended in two respects, i.e., changing the 12:1+1

special class ratio – which the defendant was already aware was incorrect and should be 15:1+1

– to 15:1+1 and inserting the provision that the student was on prescribed medication.  These

corrections to the IEP were made as part of the resolution session and were formalized in the

development of the corrected 2016-17 IEP for the student in mid-October of 2016. That action –

taken well prior to October 27, 2016 (i.e., when the corrected IEP was apparently mailed out to

the defendant parent) – cured that special class size and ratio deficiency in the initial IEP,

rehabilitated the "inadequate IEP" in that respect and remedied the error in the initial IEP, within

---

[3] 20 U.S.C. § 1415 (f)(1)(B)(i) provides that the resolution session shall be attended by "the relevant member or members of the IEP team", not by the "entire IEP team". See also 29 CFR § 300.510 (a)(1). In the instant case, for example, only a single member of the IEP team – CSE Chair Rosen – attended the resolution session with the defendant parent.

the meaning of *R.E.*, during the resolution period. Further, the defendant parents (at the October 7, 2016 resolution session) and their counsel (via the October 21, 2016 letter of the District's counsel to the parents' counsel) were informed of the class size and ratio correction to the initial IEP well before the expiration of the resolution period.

*R.E.* does not require that an "amended" IEP (as referred to by the Court at *R.E.*, 694 F.3d at 187-88), correcting errors in an IEP, especially where, as here, there is knowledge of, and notice to, the defendant parents during the resolution period of those corrections, actually be mailed to, or placed in the hands of, the defendant parents before the conclusion of the resolution period in order to satisfy the rule established by the Court in *R.E.* that the "adequacy of the IEP will . . . be judged by its content at the close of the resolution period."  It is submitted that the "content" of the IEP, for purposes of determining its "adequacy", is established when, as here, in response to the claims in the defendant parents' due process complaint, the school district acknowledges the amendment/revision/correction of the IEP to the defendant parents during the resolution session (i.e., in this case, on October 7, 2016), if not when it develops the corrected IEP (i.e., in this case, in mid-October of 2016). See *J.K. v. Hudson City Sch. Bd. of Educ.,* 14 CV 1985, 2015 WL 5729903, at *12 (N.D. Ohio Sept. 28, 2015) ("[T]he IDEIA allows for a resolution session to be held fifteen days following a request for due process to provide the district with an opportunity to resolve the complaint. 20 U.S.C. § 1415(f)(1)(B). This 15-day window supports Defendant's assertion that the IDEIA actually contemplates the parties working together to reach a solution. . . .  There is no basis for Plaintiffs' argument that the filing of a due process complaint creates a barrier for review of any documents prepared during subsequent attempts to resolve a complaint regarding a student's IEP.")

Further, in relying upon the 15:1+1 class size and ratio in the corrected IEP, the District was not relying upon prohibited "retrospective evidence", since the defendant parents were well aware as of the June 9, 2016 CSE meeting (as well as the meeting of defendant parent C.S. with middle school teachers later in June 2016) that the student's 2016-17 IEP was to provide for a 15:1+1 special class for the student. "Retrospective" evidence is that discovered **after** a decision is made to reject the recommended placement. *S.E. v. New York City Dep't of Educ.*, 113 F. Supp. 3d 695, 708 (S.D.N.Y. 2015); *Scott ex rel. C.S. v. N.Y.C. Dep't of Educ.,* 6 F.Supp. 3d 424, 445 (S.D.N.Y. 2014). Information that is available to a parent at the time that the parent rejected a recommended placement is not retrospective evidence. *S.E.*, 113 F. Supp.3d at 445; *J.C. ex rel. C.C. v. New York City Dep't of Educ.*, 13 CIV. 3759 (PGG), 2015 WL 1499389, at *25 (S.D.N.Y. Mar. 31, 2015), *aff'd sub nom. J.C. v. New York City Dep't of Educ.*, 643 F. App'x 31 (2d Cir. 2016) ("**In the absence of evidence available to the parents at the time of the decision not to enroll their child in the placement**, 'the appropriate inquiry is into the nature of the program actually offered in the written plan,' not a retrospective assessment of how that plan would have been executed." [**emphasis**  added]); *N.S. v. New York City Dep't of Educ.*, 13-CV-7819 (VEC), 2014 WL 2722967, at *14 (S.D.N.Y. June 16, 2014).

In the instant case, the relevant and correct information concerning the 15:1+1 special class size and ratio as being the recommended placement for the student for the student's 2016-17 school year was well known to the defendant parents months before the defendant parents' August 17, 2016 letter advising the District of the defendant parents' rejection of the 15:1+1 placement of the student for the 2016-17 school year.

It is submitted that, as *R.E.* does not require either the SRO or this Court to reject the corrected IEP in this case as being the source of the provision of a FAPE to the student for her

2016-17 school year, the SRO erred as a matter of law in ruling to the contrary.  Absent any legal

prohibition upon the Court relying upon the corrected IEP as the source for the provision of a

FAPE to the student for the 2016-17 school year based upon the decision of the Second Circuit

Court of Appeals in *R.E.*, the Court should adopt and confirm the reasoning of the IHO (and, in

its alternative ruling, that of the SRO) as concerned the claimed procedural error raised by the

defendant parents based upon the correction to the June 9, 2016 IEP during the resolution period,

i.e., that as it did not impede the student's right to a FAPE, significantly impede the parents'

opportunity to participate in the decision-making process or cause a deprivation of educational

benefits to the student (see *Y.A.*, 2016 W.L. 5811843, at \*7); that it does not, therefore, rise to the

level of a denial of a FAPE to the student. See e.g., *O.O. ex rel. Pabo v. D.C.,* 573 F. Supp. 2d

41, 47-48 (D.D.C. 2008). The Court should, consequently, further adopt their rulings that the

corrected IEP provided the student with a FAPE.

## POINT II

**SHOULD THE COURT FIND THAT THE SRO DID NOT ERR IN ITS APPLICATION OF THE DECISION IN *R.E.* TO FORECLOSE CONSIDERATION OF THE CORRECTED IEP, THE COURT SHOULD EXERCISE ITS EQUITABLE POWER TO DENY THE TUITION RELIEF ORDERED BY THE SRO AND THE DEFENDANTS' ANTICIPATED DEMAND FOR PREVAILING PARTY ATTORNEY FEES AND COSTS**

Pursuant to 20 U.S.C. § 1415 (i)(2)(C)(iii), the Court in this action "shall grant such relief

as the court determines is appropriate."  By this language in the statute, this Court is instructed

that "equitable considerations are relevant in fashioning relief" in this action and that the Court

enjoys "broad discretion" in determining what, if any, remedies should be granted to the parties

before it in this action, with the only restriction being that the relief granted or withheld must be appropriate in light of the purposes of the Act. *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985); *Doe v. E. Lyme Bd. of Educ.,* 790 F.3d 440, 454 (2d Cir. 2015); *Mackey ex rel. Thomas M. v. Bd. of Educ. For Arlington Cent. Sch. Dist.*, 386 F.3d 158, 165 (2d Cir.), *supplemented sub nom. Mackey v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 112 F. App'x 89 (2d Cir. 2004); *Bd. of Educ. of City Sch. Dist. of City of New York v. Gustafson*, 00 CIV. 7870 (GEL), 2002 WL 313798, at *3 (S.D.N.Y. Feb. 27, 2002) ("[I]t is clear that the Act contemplates that the Court will exercise its independent equitable power to 'grant such relief as the court determines is appropriate.' (*Citation* omitted). In other words, while required to defer to the state authority's educational judgments, the Court is not limited merely to reviewing the reasoning of the agency decisionmakers, and remanding for further proceedings if it finds legal flaws in that reasoning.")

In *Garcia v. Bd. of Educ. of Albuquerque Public Sch.*, 520 F.3d 1116, 1126-29 (10th Cir. 2008), in reviewing a decision of a district court to exercise equitable powers to deny the administratively ordered relief for a violation of the IDEA to successful parents, the Tenth Circuit Court of Appeals assumed school district liability, and turning to the question of remedy relating to a claim of procedural errors resulting in the denial of a FAPE to the student, upheld the decision of the district court in denying imposition of the administratively ordered relief. In doing so, the Tenth Circuit Court of Appeals cited to the broad discretion granted the district court in determining relief for successful IDEA claims and held that, as stated by the Supreme Court in *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944) and reaffirmed in subsequent Supreme Court decisions, "[a] grant of jurisdiction to issue [equitable relief] hardly suggests an absolute duty to do so under any and all circumstances." The Court

went on to further hold that "[g]iven that IDEA contains no . . . unequivocal statement altering the court's equity jurisdiction, a district court's discretion encompasses the ability to deny relief based on equitable considerations"; and that "a district [court] may also choose to withhold relief despite a demonstrated (or, in this case, assumed) statutory violation if it has a valid basis in equity for doing so."

In the instant case, the record establishes beyond dispute that the parties were aware from the time of the June 9, 2016 CSE meeting that the educational program recommended by the District for the student's 2016-17 school year proposed a 15:1+1 class size and ratio and that the IEP corrected through and during the resolution process authorized by the statute confirmed that 15:1+1 class size and ratio. The record further establishes that the defendant parents were determined to reject even the smaller class size of 12:1+1 in the initial uncorrected June 9, 2016 IEP and to continue the placement of the student at the Eagle Hill private school and seek tuition reimbursement for that placement by the District; that the defendant parents would not even agree during the resolution session held on October 7, 2016 to the correction of the initial June 9, 2016 IEP to reflect the 15:1+1 class size and ratio of which they had been notified at the June 9, 2016 CSE meeting. Finally, the record establishes that both the IHO and the SRO found that the recommended special education program reflected by the corrected IEP which had been communicated to the defendant parents at the June 9, 2016 CSE meeting (and which was the only available educational program for the student at the District's middle school) would have provided the student with a FAPE.

Under these circumstances, the equitable considerations which are relevant in fashioning relief in this action warrant this Court exercising its broad discretion to deny the tuition relief that the SRO awarded to the defendant parents and which the defendant parents will seek that this

16

Court compel the District to pay (together with an anticipated demand for prevailing party attorney fees and costs) through their cross-motion for summary judgment.

Such an equitable decision not to grant such relief to the defendant parents is appropriate in light of the IDEA's purposes of (1) providing disabled children with a free appropriate **public education** that emphasizes special education and related services designed to meet their unique needs, (2) ensuring that educators and parents have the necessary tools to improve educational results for children with disabilities and (3) assessing and ensuring the effectiveness of efforts to educate children with disabilities. See *Garcia*, 520 F.3d at 1129-31. Those purposes are clearly served by this Court respecting the recommended special education services set forth in the FAPE-providing corrected IEP designed by the District for the public school education of the student[4] and in neither rewarding the parents, nor penalizing the District, for a one-day-late mailing of the corrected IEP by requiring the District to reimburse or pay the student's tuition for the student's continued enrollment at the Eagle Hill private school for the 2016-17 school year (together with the parents' prevailing party attorney fees and costs).

---

[4] As recognized by the SRO, in addition to providing for a 15:1+1 special class for academic classes, the corrected IEP (as well as its predecessor) was designed to address the student's special education needs in recommending the student for a 12:1 special class for skills instruction for three 42-minute sessions per six-day cycle; a daily 5:1 special class for reading; two 42-minute sessions of occupational therapy ("OT") per week in a group of five; and four motor skills annual goals to address the student's needs regarding visual/perceptual skills, motor coordination, graphomotor skills and endurance for task completion. It also included two 42-minute sessions of speech-language therapy per week in a group of five and one 42-minute session of speech-language therapy per week in a group of two and five annual goals to address the student's needs in expressive vocabulary, auditory memory, and language processing. It also included a recommendation of one 42-minute session of counseling per week in a group of five and one 42-minute session of individual counseling per week, along with two social/emotional behavioral annual goals to address the student's attentional and social needs. It also included a number of accommodations and environmental and human or material resources to support the student, including: additional processing time, special seating, refocusing and redirection, check for understanding, assignments broken into smaller components, organizational and visual support, multisensory approach, graphic organizers, positive reinforcement, cues for expected behavior, multiplication table, access the computer and an FM system. *SRO Decision at pages 23-24.*

**CONCLUSION**

For the reasons set forth herein, the Court should exercise its equitable powers to render an order (1) reversing the decision of the SRO and (2) either (a) adopting the decision of the Impartial Hearing Officer/alternative decision of the SRO that the District had provided a FAPE to the student for the 2016-17 school year, (b) declining to adopt and confirm the decision of the SRO that the brief delay beyond the 30-day resolution period for issuance of the corrected IEP warranted a finding of denial of a FAPE to the student for the 2016-17 school year, or (c) declining to grant the relief requested by the defendants, who are cross-moving for confirmation and enforcement of the SRO's order in SRO Decision No. 17-043.

Dated: March 26, 2018

> Respectfully submitted,
>
> SHAW, PERELSON, MAY& LAMBERT,  LLP
> Attorneys for Plaintiff Yorktown Central School District
>
> By:_____/S/_____
>
> Mark C. Rushfield, Esq.
> Of Counsel to the Firm
> 21 Van Wagner Road
> Poughkeepsie, New York 12603
> (845) 486-4200